IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ELLIOTT FINCH, JR.                                              PETITIONER

VS.                        CASE NO. 5:18CV00128 BRW/PSH

WENDY KELLEY, Director of the
Arkansas Department of Correction                    RESPONDENT

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

Elliott Finch, Jr. ("Finch") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Finch is currently in the custody of the Arkansas Department of Correction (ADC) following a 2016 jury trial in the Circuit Court of Pulaski County on the charges of kidnapping, aggravated residential burglary, aggravated assault on family or household member, and first-degree terroristic threatening.  The jury did not return a verdict on kidnapping.  Finch was convicted on all other charges.  With enhancements for use of a firearm and for being an habitual offender, Finch was sentenced to life imprisonment, plus an additional fifteen year term.  On direct appeal, Finch alleged the trial judge erred by denying his requests to represent himself and the trial judge abused his discretion by

denying his motion for mistrial based on juror misconduct. *Finch v. State*, 2018 Ark. 111.

In this federal habeas corpus petition, filed on May 17, 2018, Finch raises the same two claims raised on direct appeal. The Court finds merit in Finch's first claim and recommends that habeas corpus relief be granted for the reasons set forth below.

## Finch's First Claim: Error in Denying Self-Representation Requests

Finch's requests to represent himself were denied by the trial court. On appeal, the Supreme Court of Arkansas affirmed the order denying Finch's requests to represent himself, albeit for different reasons than those given by the trial court. When a state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). The United States Supreme Court offers guidance in interpreting the statute:

> A state court decision will be "contrary to" our clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."
> . . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

*Penry v. Johnson*, 532 U.S. 782, 792-93 (citations omitted).

When, as in this instance, the state appellate court issues a reasoned opinion, it is the decision of the appellate, not the trial, court which must be examined in light of 28 U.S.C. § 2254(d)(1), (2). *Wilson v. Sellers*, ___ U.S.___, 138 S.Ct. 1188, 1191-1192 (2018). However, a thorough understanding of the trial court proceedings is necessary, both for context and because the Supreme Court of Arkansas' decision was based upon its view of the trial court events. The parties agree that the clearly established Federal law which applies to Finch's first claim is *Faretta v.*

*California*, 422 U.S. 806 (1975). Having identified the applicable law, the question is whether the state appellate court's decision was contrary to or an unreasonable application of *Faretta*, or was based on an unreasonable determination of the facts presented in state court. Finch and respondent Wendy Kelley ("Kelley") have supplied the Court with supplemental briefs pursuant to the Court's request. See docket entry numbers ("D.E.")  10, 17 & 18.

## I.      Trial Court Proceedings and Application of Clearly Established Law

*A.         Clearly Established Federal Law*

The *Faretta* Court held that the Sixth Amendment provides a defendant with the right to represent himself, assuming he knowingly and intelligently waives his right to an attorney, and the state may not force a lawyer upon a defendant who desires to conduct his own defense.

*B.         Relevant Trial Court Pleadings Regarding Self-Representation*

Finch was charged by felony information on October 1, 2013. D.E. 7-2, page 10. Based upon Finch's indigency, the public defender, William R. Simpson, Jr. ("Simpson"), was appointed as counsel on October 7. D.E. 7-2, page 33. Shortly thereafter, on October 11, Simpson filed a motion for discovery. D.E. 7-2, page 37. In April 2014, the trial court ordered Finch to undergo an examination to determine his fitness to proceed and his criminal responsibility. D.E. 7-2, pages 38-48. In September 2014, Finch filed a *pro se* motion to dismiss the information. D.E. 7-2, pages 51-53. This would be the first of many *pro se* requests. On October 7, 2014, the trial judge denied Finch's *pro se* motion, finding:

> The defendant appeared for plea and arraignment October 8, 2013. He was determined to be indigent and counsel was appointed to represent him. A defendant is not entitled to accept or retain counsel to represent him and also proceed pro se. *Brewer v. State*, 371 Ark. 532, 268 S.W.3d 332 (2007). Legal issues should be brought forth through counsel.

D.E. 7-2, page 55.

On November 6, 2014, Finch moved for the trial judge to relieve or substitute counsel, citing alleged shortcomings and disagreements with Simpson. D.E. 7-2, pages 56-58. Finch filed a similar motion eleven days later. D.E. 7-2, pages 61-63. On January 15, 2015, the trial court denied both

motions to relieve or substitute counsel, reciting verbatim the language cited above from D.E. 7-2, page 55. D.E. 7-2, page 66.

In February 2015, the report of the mental evaluation was submitted to the trial court. This report, from Forensic Psychologist Jennifer Boye ("Boye"), reflected her opinion that Finch "possessed a basic understanding of the criminal proceedings against him and possessed the capacity to rationally assist and communicate with his attorney regarding the case." D.E. 7-2, page 68. She opined Finch "appeared to be of at least average intelligence" and that he demonstrated "a greater level of understanding of his legal proceedings than the typical defendant." *Id.* at 75, 77. Boye also noted Finch had undergone a previous forensic evaluation in 2006. Dr. Del Thomas administered the 2006 evaluation, finding Finch had the capacity to understand the proceedings against him, to assist effectively in his own defense, to appreciate the criminality of his conduct, and to conform his conduct. *Id.* at 71. Finch did not participate in an assessment of his mental state at the time of the offense, telling Boye he did not intend to use a mental health disease defense. As a result of his non-participation, Boye did not opine on Finch's state of mind at the time of the alleged offenses. Boye found Finch "capable of making a knowing and rational decision to decline the evaluation." *Id.* at 68.

Finch continued to file a variety of *pro se* motions,[1] all of which were denied. In each of the orders denying these motions, the trial court cited the language from D.E. 7-2, page 55. D.E. 7-2, pages 80, 129, & 130.

In 2016, Finch continued to file *pro se* motions, including a February 25 motion to waive counsel and proceed *pro se.* D.E. 7-2, pages 136-138. In this motion, Finch cited his Sixth Amendment right to represent himself assuming he voluntarily and intelligently elected to do so. Finch asserted it would be error to require him, against his will, to accept the public defender and to deny his request to conduct his own defense. *Faretta*, Finch argued, guaranteed his right to

---

[1]Finch filed a motion for release, a motion to dismiss, a motion for transcript, and a motion for writ of mandamus.

proceed without counsel and without the state forcing him to accept a lawyer when he desired to conduct his own defense.  He moved "to proceed pro se and request[ed] this court to grant a hearing on the motion as soon as possible without delay."  *Id.* at 137.

Many more *pro se* motions followed.  For example, Finch requested a transcript on more than one occasion, moved to compel a ruling, requested habeas corpus relief, and moved to dismiss the case.  In October of 2016 the trial judge entered a series of orders denying these motions.  D.E. 7-2, pages 182-187.  Each of these six orders included the previously cited language, stressing Finch was not entitled to accept or retain counsel and also proceed *pro se*.  One of these orders was a denial of Finch's February 25, 2016 written motion to waive counsel and proceed *pro se*.  D.E. 7-2, page 186.  Thus, the trial court denied Finch's motion to waive counsel because Finch's counsel did not make the motion.  The trial court did not consider the merits of the motion nor did it conduct a hearing on Finch's motion to waive counsel and proceed *pro se*.

C.       *Relevant Trial Court Hearings Regarding Self-Representation:*

At an omnibus hearing conducted on September 22, 2015, Finch asked for permission from the trial judge to speak.  After permission was granted, Finch stated he did not want Simpson on the case.  Later in the hearing Finch asked the court to fire Simpson and appoint a new attorney.  The trial judge denied the request.  D.E. 7-2, pages 327-328.  Before the hearing was adjourned, Finch informed Simpson "you need to relieve yourself because you're not representing me."  D.E. 7-3, page 4.

Another omnibus hearing was held on October 19, 2015 at which the following colloquy occurred:

>  Finch: Your Honor, I don't want him as my attorney.  It's been a conflict.  Me and
>  him had no communication at all. And he ain't done nothing for me, Your Honor.
>  Judge: Mr. Finch - -
>  Finch: He lie – lie – been lying to me, Your Honor.
>  Judge: Mr. Finch, do you have attorney – do you have witnesses that you need called

for this trial?

Finch: I don't want him as my attorney.

Judge: That's not my question.

Finch: That's all I'm going to say, Your Honor.

Judge: Okay.  So you have no witnesses.  The trial is set.  You have – what's the --

Finch: I want to represent myself then.

Judge: Mr. Finch, you –

Finch: I don't want him – I don't want him as counsel.

Simpson: I --

Finch: I don't want him as counsel.

Judge: Okay.  You can't – only one person can talk at a time, Mr. Finch.

Finch: Well, I --

Judge: And at this time --

Finch: Can I speak then?

Judge: No, Mr. Simpson was talking.  You'll have to wait till he gets through.

Simpson: Yeah, he's --

Judge: Mr. Simpson.

Simpson: He's indicated to me before he does not have any witnesses.  And I want to make that clear.

Judge: Okay.

Finch: I didn't tell him that.  That's a lie.

Judge: Okay.  Mr. Finch, do you have witnesses in this case?

Finch: Yeah, I just told him back there.

Judge: Okay.  Who are the wit --

Finch: I talked to him --

Judge: Who are – who are the witnesses that you --

6

Finch: I don't want him as my counsel.

Judge: That's not my question, Mr. Finch.

Finch: I want to represent myself.

Judge: Mr. Finch, who are the witnesses --

Finch: I want to represent myself, Your Honor.  And that's all I'm telling you.

Judge: Okay.  All right.

Finch: I don't want him as my counsel.

Judge: Mr. Simpson --

Finch: Take it how you want to, y'all.  Because he – he --

Judge: Mr. Finch --

Finch:  – he's sitting up here and lied to me, Your Honor.

Judge: Hey, I'm trying to talk to you and you sitting there and just keep over talking me.  Listen.  Listen.  Even if Mr. – if I remove Mr. Simpson, you got to tell the State who your witnesses are.  So do you have witnesses for this case?  Do you have witnesses for this --

Finch: No, I don't have no witnesses.

Judge: Okay.  You don't have any witnesses, okay.

Finch: Don't want no witnesses.  I don't want no attorney.

Judge: Now – okay.  Do you – what grade did you finish in high school?  What grade did you finish in high school?

Finch: I got a GED, Your Honor.

Judge: Okay.  GED, okay.  What year did you get that?

Finch: Like '99.

Judge: Okay.  And have you ever been in the system before?

Finch: Yeah, I been through the system.

Judge: You understand the charges against you?

7

Finch: Yeah, I understand the charges.

Judge: What are the charges against you?

Finch: He ain't even told me the –

Judge: And let –

Finch:  – punishment, the range the – the time that it carry.

Judge: What are the charges against you?  See, I'm – I'm going to – I'm going  to get a report on Act 3 if you don't – if you don't follow – I'm trying to talk –

Finch: Get your report, like I said.

Judge: I'm trying to talk to you.

Finch: This man – this man been lying to me.

Judge: Mr. Finch, you said you –

Finch: I'm not going to fool with this no more, Your Honor.

Judge: I have to go through a process if you want me to repre – if you want to represent yourself, but you won't let me finish.

Finch: That's Act 3.  We'll request another Act 3 then.

Bailiff: All right. Let's go.

Judge: All right.  He's already had one?

Simpson: Yes.

Judge: We're going to request another Act 3 then.

Judge: All right.  That's – I understand.

Finch: I don't want him as counsel.

Judge: I'm not going to let him –

Finch: This man –

Judge: – represent himself.

Finch: This man voluntary lie to me.

Judge: So we'll go ahead and set it for trial.  It's set for trial.  So it's general now?

Simpson: Yes, general now.

Judge: All right.

Simpson: No motions.  Just – except for the motion on the – on Count 3 –

Judge: All right.

Simpson:  – being severed.

Judge: Okay.  All right, then.

. . .

Judge: . . . And just for the record, Mr. Finch, your motion to represent yourself is

denied based on the history that we've had with report from Act 3 and all that.

D.E. 7-3, pages 9-15.

   Another hearing was conducted on March 10, 2016, for the purpose of reviewing the Act 3 report.  Finch had again been uncooperative with regard to the second prong of the evaluation, dealing with his mental state at the time the crimes were alleged to have been committed.  The results of the second examination mirrored those of the first.  Finch again informed the examining physician that he did not want to pursue a defense of not guilty by mental disease or defect.  There was no debate concerning the first prong of the evaluation, regarding Finch's ability to understand the proceedings and assist in the defense of the case.

   Simpson brought to the trial judge's attention that Finch had filed a motion to proceed *pro se*, and the following conversation ensued:

Simpson: . . .  Also, one other matter, Judge.  The Defendant filed a motion to

proceed pro se.

Finch: New counsel.

Judge: All right.  What – how far did you go in school, Mr. Finch?

Finch: I got a GED.

Judge: All right.  When – how long ago did you get the GED?

Finch: Since 1999.

Judge: Okay.  What year did you drop out of high school?

Finch: Probably '94.

Judge: I mean – okay.  And what grade was that?

Finch: Twelfth grade.

Judge: Okay.  And how long – I mean, how many times have you been in court?  Not this time, but other – you have priors against you?

Finch: Yeah, I've been in court before.

Judge: So are you aware how the system works?

Finch: Yes, sir.

Judge: And you understand what a hearing is?

Finch: Yes, sir.

Judge: Do you understand motions?

Finch: Yes, sir.

Judge: What are motions?

Finch: Filing different –

Judge: What type of motions?

Finch: You want – need example?

Judge: Yes, sir.

Finch: Motion to dismiss, motion to suppress.

Judge: Okay.

Finch: There's several different motions.

Judge: And you want to represent yourself why?

Finch: Because I'm not getting adequate counsel.

Judge: And how is that not so?

Finch: Because I'm being – I'm not getting the stuff I needed to aid in my defense. And I'm asking for it and it's being kept from me.

Judge: What are you looking for?

Finch: My discovery, it's not being presented to me.

Judge: He hasn't shown it to you?

Finch: I ain't – I ain't got it.

Judge: That's not my ques –

Finch: It's being kept from me.

Judge: Has he shown it to you?

(Finch shakes head from side to side)

Judge: He hasn't talked to you about the case at all?

Finch: He talked to me about it –

Judge: Okay.

Finch:  – but stuff is being kept from me.

Judge: And what else?

Finch: Intentionally.

Judge: Excuse me?

Finch: Intentionally.  And also, evidence to support – support my innocence is being

kept from me –

Judge: How's it being –

Finch:  – which is all in my discovery, but it won't be produced to me.

Judge: How's it being kept from you?  What's –

Finch: My attorney – I asked my attorney for it, he won't supply it to me.

Judge: He won't give a copy of your –

Finch: He wants –

Judge: That's the only thing?

Finch: He won't even ask for it or not.

Judge: He has it, but I don't think –

11

Finch: He has access to it, but he won't allow me to it –

Judge: Well, I think that's –

Finch:  – to aid in my defense.

Judge: That's part of their policy is not to allow that to be in the jail because you understand if it's in the jail –

Finch: That's part of my defense.

Judge: Mr. Finch, if it's in the jail and somebody gets it then they could use that to – held against you, do you understand that? You understand that?

Finch: I'm not in jail.

Judge: No. No.  You're not in jail?

Finch: I'm in the Arkansas Department of Corrections.

Judge: Well, either way, you're in jail, Department of Corrections, jail, you're locked up.  Part of the problem is if somebody gets your file then their problem is that somebody could use it to try and get – make them a deal and say – listen, don't say anything.  So you understand what the charges are against you?

Finch: My property is locked up –

Judge: Do you understand –

Finch:  – and nobody has access to it.

Judge:  – the charges against you?

Finch: I just wish to waive counsel.  That's all I'm asking the Court to do.

Judge: I have to ask questions.  Do you understand the charges against you?

Finch: Yes, I understand.

Judge: What are the charges –

Finch: I've been told, yeah.

Judge:  – against you?  What are the charges against you?

Finch: It's – it's several charges.  I – I –

12

Judge: What are they?

Finch: I'm –

Judge: Do you understand the exposure that you have in the Arkansas Department of Correction?

Finch: (no response)

Judge: Is that a yes or a no?

Finch: I'm aware of the charges –

Judge: No.

Finch:  – and what the time it carry and everything, Your Honor.

Judge: Okay.  And you understand you're charged as a habitual offender?

Finch: Yes, all that –

Judge: These are –

Finch:  – all that been explained to me.

Ms. Butts-Hall (prosecutor): He's also charged as a strike, Your Honor.

Finch: All that's been –

Ms. Butts-Hall: There's no –

Finch: Yeah, you informed me of that.

Judge: No, Mr. Simpson informed you.  I never informed you of that, right?

Finch: No, Mr. Griffen informed me of the –

Judge: No, Mr. Simpson –

Finch:  – enhancement that they did, yeah.

Ms. Butts-Hall: Your Honor, I might be able to –

Finch: All that's been informed.

Ms. Butts-Hall: This was amended.  And so this was talked about in open court one day.

Judge: Okay.  All right.  When's it set for trial?  We need a trial date?

Simpson: We need an omnibus hearing and a trial date.

Judge: You understand you want to toll your time?

Finch: Yes.  We –I'll toll time. . . .

Judge: All right.  And so do you understand the process of trying this matter?

Finch: Yes, sir.

Judge: You understand these charges are three strikes?

Finch: Yes, sir.

Judge: What does that mean?

Finch: It's already been explained to me –

Judge: No, I'm asking –

Finch: – by Mr. Simpson.

Judge:  – you what does it mean.

Finch: It's an enhancement.

Judge: And what does that mean –

Finch: Dealing with my previous convictions.

Judge: And what will it do for you if you're found guilty?

Finch: Enhance my charge, the sentence guideline.

Judge: And how will it enhance your sentence?  You don't know, do you?

Finch: Depend what type of felony it's involving.

Judge: Well, no.  You don't know, do you?

Finch: Yes, I know.

Judge: Well, tell me.  I have to know that you know because I can't let you repre –

Finch: It will add additional time.

Judge: How much additional time?

Finch: What felony are you referring to?

Judge: I'm – no, the felony that you have.  It's a – any felony.

14

Finch: He's going to enhance it, the number of years I can receive on it –

Judge: Well, I –

Finch:  – on the felony.

Judge: How will it enhance the number of years?

Finch: The years I can receive.

Judge: No.  I'm asking you about the three-strike provision.  You have three violent – you have two prior violent offenses.  This is a violent offense.  If you're found guilty, what will it do for you sentence?

Finch: Well, some of the charge – it's no less than life.  If I'm convicted of the Y-felony, it's no less than life.  And –

Judge: Okay.  Well, I understand that.  But if you get years, how much would you have to do?

Finch: All of it, I'd be doing 100 percent on it.

Judge: You'd be doing 100 – you understand that?

Finch: Yeah.

Judge: So if you get ten years, you know you're doing ten years?

Finch: I'm going to – I'm going to do ten years.

Judge: Okay.  And you understand – you're willing to risk your own for that?

Finch: Yeah, rather than – yes.

Judge: Is that a yes or no?

Finch: It's a yes.

Judge: State have anything you want to ask regarding self-representation but nothing else?

Ms. Butts-Hall: Your Honor, we would ask about understanding of the Rules of Evidence and Rules of Criminal Procedure.

Judge: You understand those, the Rules of Procedure –

Finch: Yes.

Judge:  – and Criminal Evidence?

Finch: Yes.

Judge: Okay.

Ms. Butts-Hall: And that if Mr. Finch was to represent himself, he would be bound by the same rules as the State.

Judge: Oh, he understands that.  There's not going to be any –

Ms. Butts-Hall: Your Honor, I just want to make sure it's clear on the record.

Judge: I understand.

Finch: Also, Your Honor, if the Court would, I would like stand-by counsel though, just stand-by.

Judge: For what?  You don't want –

Finch: I'm – I'm just asking.

Judge: No, you don't want counsel.  You want somebody to put on a show for you and that's not going to happen.

Finch: I don't – I don't need –

Judge: No, now listen.

Finch: I don't need no one to put on a show for me.

Judge: Mr. Finch.  Mr. Finch, I'm talking.

Finch: I done been in here numerous, numerous times.

Judge: You have counsel.

Finch: I ain't go no justice from this Court, Your Honor.

Judge: You have counsel.  I've given you counsel.

Finch: Counsel ain't done nothing for me.

Judge: Mr. Simpson, do you feel like that you can represent Mr. Finch?

Simpson: Yes.

Finch: I'm asking –

Judge: All right.  Your request to be – to self -represent yourself is going to be denied based on the seriousness of the offenses and the likelihood of you getting some serious time, the Court's going to deny that request.

D.E. 7-3, pages 40-51.

Simpson represented Finch at the trial, which began on November 29, 2016.

D.      *Examples of Faretta Analysis*

Case law from Arkansas, the Eighth Circuit Court of Appeals, and the United States Supreme Court examine the basic *Faretta* requirements, and were available to guide the trial judge's treatment of Finch's requests to represent himself.  Briefly, these cases provide:

      *  Finch should have been explicitly informed of his constitutional right to have an attorney.  *Patterson v. Illinois*, 487 U.S. 285, 292; *Bledsoe v. State*, 337 Ark. 403, 407 (1999).

      *  Finch was entitled to specific warnings of the dangers and disadvantages of self-representation.  *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279; *Hatfield v. State*, 346 Ark. 319, 325 (2001).

      *  Once apprised of the dangers and disadvantages, the trial court bore a "weighty responsibility" in determining if Finch knowingly and intelligently waived his right to counsel.  *Gibson v. State*, 298 Ark. 43, 45 (1989) (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)).

      *  Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights, such as the right to represent oneself, and the state bore the burden of showing Finch voluntarily and intelligently waived this right. *Daniels v. State*, 322 Ark. 367, 372 (1995); *Scott v. State*, 298 Ark. 214, 216 (1989).

      *  The trial court's determination of whether Finch intelligently waived his right to counsel was dependent on the particular facts and circumstances of this case,

17

including Finch's background, experience, and conduct. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Gibson v. State*, 298 Ark. 43, 45 (1989).

\*    The primary consideration should have been whether Finch was made sufficiently aware of his right to have counsel and of the possible consequences of proceeding without counsel. Finch's technical legal knowledge, and his ability to ably defend himself, were not relevant to the primary question of whether he knowingly and voluntarily waived his right to self-representation. *Faretta v. California*, 422 U.S. 806, 836 (1975); *Godinez v. Moran*, 509 U.S. 389, 399 (1993); *Hatfield v. State*, 346 Ark. 319, 325 (2001).

\*    While there is no script to be followed, Arkansas cases provide examples of thorough trial court consideration of requests such as those made by Finch. *See, e.g., Williams v. State*, 2009 Ark.App. 684 (2009).[2]

E.    *The Trial Court's Misapplication of Faretta*

The trial court misapplied *Faretta* in the following ways:

When Finch requested to represent himself, the trial court did not explicitly inform him of his right to counsel.

The trial court did not conduct an orderly examination of Finch to determine if he understood

---

[2]The Arkansas Court of Appeals cited the *Williams* case as a "great example" of how a trial court should interview a defendant wishing to proceed *pro se*. The trial judge in *Williams* found the defendant made unequivocal requests to waive his right to counsel and represent himself. The trial judge explained to the defendant: his right to counsel; the court's advice against self-representation because this would severely disadvantage the defendant and could result in disaster; the defendant would be held to the same restrictions and obligations as a lawyer; the defendant would be subject to the rules of evidence, meaning that objections by the prosecutor might be sustained; the defendant would not be allowed to testify via questions posed to witnesses; the defendant would be subject to cross-examination about his criminal history if he chose to testify; the defendant was apprised that he might not be skillful in cross-examining witnesses, and that he might not understand the nuances of the charges, jury instructions, or how to structure a defense; and the defendant was informed of the seriousness of the charges and the possibility of a life sentence. *Ivory v. State*, 2017 Ark. App. 269. The defendant in *Williams* was provided with stand by counsel, a practice which is practical, given a defendant has the right to subsequently waive his right to self-representation after initially asserting the right. *See, e.g., Williams, supra*, at 8*; Hatfield v. State*, 346 Ark. 319, 328 (2001)*; Ivory, supra*, at 14*.*

18

the dangers and disadvantages of self-representation.  Questions were posed by the trial judge at both the October 19, 2015, and March 10, 2016, hearings.  These questions often centered around Finch's technical legal knowledge[3] rather than whether he was aware of his right to counsel and of the possible consequences of proceeding without counsel.

The trial court made no factual finding that Finch's request was equivocal.

The trial court made no factual finding that Finch was not competent to represent himself.

The trial court made no factual finding that Finch's decision was not knowing and intelligent.

The trial court made no factual finding that Finch engaged in conduct that would prevent the fair and orderly exposition of the issues.

The rationale[4] for the trial court's denial of Finch's request to represent himself at the close of the October 19, 2015 omnibus hearing[5] failed to satisfy the *Faretta* factors.

The rationale[6] for the trial court's denial of Finch's request to represent himself at the March

---

[3]In one instance, the trial judge actually answered a question which the prosecutor posed to Finch.
  Ms. Butts-Hall: And that if Mr. Finch was to represent himself, he would be
  bound by the same rules as the State.
  Judge: Oh, he understands that.  There's not going to be any –
  Ms. Butts-Hall: Your Honor, I just want to make sure it's clear on the record.
  Judge: I understand.
D.E. 7-3, page 50.

[4]The trial judge ruled, "And just for the record, Mr. Finch, your motion to represent yourself is denied based on the history that we've had with report from Act 3 and all that."  D.E. 7-3, pages12-15.

[5]The trial judge appeared to have decided to deny Finch's request before questioning him. Early in the omnibus hearing, the transcript reveals the following exchange:
  Finch: I don't want him as counsel.
  Judge: I'm not going to let him –
  Finch: This man –
  Judge: – represent himself.
D.E. 7-3, page 14.

[6]The trial judge ruled, "Your request to be – to self -represent yourself is going to be denied based on the seriousness of the offenses and the likelihood of you getting some serious time, the Court's going to deny that request."  D.E. 7-3, pages 40-51.  On direct appeal, the Supreme Court of Arkansas flatly stated that this rationale for denying Finch's request was "invalid." *Finch v. State*, 2018 Ark. 111, 6.

10, 2016, hearing failed to satisfy the *Faretta* factors.

The trial court's Order of October 2016 denied Finch's request for self-representation because "[A] defendant is not entitled to accept or retain counsel to represent him and also proceed pro se." D.E. 7-2, page 186. This ruling failed to address any of the *Faretta* factors.

F.      *Summary of Trial Court's Decisions on Finch's Motions to Represent Himself.*

In summary, *Faretta* requires the trial court to inform a defendant of his right to counsel, to thoroughly inquire and determine that the request to represent one's self is unequivocal, voluntary, intelligent, and made by a competent defendant. The trial court misapplied the clearly established Supreme Court precedent of *Faretta*. Habeas corpus relief is not, however, available as a result of the trial court's errors. Instead, the Court looks at the decision of the Supreme Court of Arkansas, the last reasoned opinion in state court on the *Faretta* issue.

**II.      Arkansas Supreme Court and 28 U.S.C. § 2254(d)(1), (2)**

A.      *Supreme Court of Arkansas' Ruling on Self-Representation:*

The Supreme Court of Arkansas recited the facts of the case and affirmed the trial court's denial of Finch's requests to represent himself:

> Appellant was charged with kidnapping, aggravated residential burglary, possession of firearms by certain persons, aggravated assault on a family or household member, and first-degree terroristic threatening for events that took place at his former girlfriend's residence in Jacksonville on August 22 and 23, 2013. At trial in November 2016, Roshandra Nwozuzu (formerly Wesley) testified that appellant is her former boyfriend and had lived with her and her two children. On August 4, 2013, after an incident in which he held a boxcutter to her neck, appellant was given a trespass warning by the Jacksonville Police Department, advising him to stay off Ms. Nwozuzu's property. On the night of August 22, Ms. Nwozuzu returned home with her children and went to her master bathroom to shower. When she exited the shower, appellant was pointing a gun at her. Ms. Nwozuzu testified that appellant threatened to kill her, her children, and himself if she screamed, and she spent the next several hours trying to calm him. Early the next morning, she was able to convince him to let her leave for work. She took her nine-year-old daughter with her but was unable to wake up her teenage son, who was taking medication that made him sleep deeply. After leaving the house, Ms. Nwozuzu immediately called the police and met officers at a nearby park. The special-response team was able to use Ms. Nwozuzu's key to get into her residence and get her son out before alerting appellant to their presence. Appellant came out of the master bedroom and was placed under arrest. The State presented the testimony of officers who found a gun and a magazine under the bed in the master bedroom and a broken window. Ms.

Nwozuzu's son, Rashaad Nelson, also testified at trial.

The jury was unable to reach a verdict on kidnapping, and the court declared a mistrial on that charge. The jury found appellant guilty of aggravated residential burglary, aggravated assault on a family or household member, and first-degree terroristic threatening. They further found that he had employed a firearm to commit each of these three felony offenses. As noted above, appellant received an aggregate sentence of life plus fifteen years' imprisonment, as well as a fine. This appeal followed.

I. *Self–Representation*

For his first point on appeal, appellant argues that the circuit court erred in denying his requests to represent himself at trial. The right of a criminal defendant, pursuant to the Sixth Amendment to the United States Constitution, to represent himself at trial was recognized by the Supreme Court of the United States in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Article 2, section 10 of the Arkansas Constitution provides that an accused in a criminal prosecution has the right "to be heard by himself and his counsel." This court has recognized that the constitutional right to counsel is a personal right and may be waived at the pretrial stage or at trial. *Pierce v. State*, 362 Ark. 491, 497, 209 S.W.3d 364, 368 (2005). A defendant may waive the right to counsel and invoke his right to defend himself pro se provided that (1) the request to waive the right to counsel is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct that would prevent the fair and orderly exposition of the issues. *Id.* (citing *Mayo v. State*, 336 Ark. 275, 280, 984 S.W.2d 801, 804 (1999) ). Determining whether an intelligent waiver of the right to counsel has been made depends in each case on the particular facts and circumstances, including the background, the experience, and the conduct of the accused. *Collins v. State*, 338 Ark. 1, 6, 991 S.W.2d 541, 544 (1999). Every reasonable presumption must be indulged against the waiver of fundamental constitutional rights. *Id.*

Here, appellant asserts that he made two timely and unequivocal requests to represent himself at trial. Reviewing the record as a whole, it is clear that appellant was dissatisfied with his appointed counsel. What is less clear is whether he made an unequivocal waiver of his right to counsel or whether he had engaged in tactics that would prevent the fair and orderly exposition of the issues. Appellant began asking for the appointment of new counsel as far back as September 22, 2015. Appellant first made a request to represent himself at trial at a hearing on October 19, 2015. In this hearing, appellant repeatedly stated that he did not want his current attorney to represent him. While he interspersed his complaints about his attorney with the statement that he wanted to represent himself, he also showed himself to be unwilling or unable to stop talking over other people, including the judge. And perhaps most importantly, the court ordered a mental evaluation at the state hospital at this hearing to determine appellant's fitness to proceed. This court has held that a trial court cannot determine whether a waiver of counsel is knowingly and intelligently made when an examination of a defendant's competency to stand trial had not yet been made. *Mayo v. State*, 336 Ark. 275, 283, 984 S.W.2d 801, 806 (1999).

Appellant alleges that at a pretrial hearing on March 10, 2016, he again

unequivocally asked to represent himself. This hearing followed a second mental evaluation at which appellant again refused to cooperate on the portion of the examination regarding his mental state at the time of the alleged offenses, despite this evaluation being done at appellant's request and under the circuit court's admonition to cooperate. During this same time, appellant continued to file various pro se motions in which he attempted to get the charges against him dismissed for violation of speedy trial. At the March hearing, appellant again showed himself to be disruptive.

We recognize that the circuit court's inquiry included irrelevant concerns, such as appellant's level of education and technical legal knowledge, and the court's stated basis for denying the request—"the seriousness of the offenses and the likelihood of [appellant] getting some serious time"—was invalid. However, on this record we must conclude that appellant's request was not unequivocal and that the trial court could have concluded that appellant had "engaged in conduct that would prevent the fair and orderly exposition of the issues." Based on the above, we affirm on this point.

*Finch v. State*, 2018 Ark. 111, 2–6.

B.        *Analysis of Arkansas Supreme Court's Decision Under 28 U.S.C. § 2254(d)(1).*

The pertinent statute, 28 U.S.C. § 2254(d)(1), requires this Court to consider whether the state appellate court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, here, the *Faretta* case.

The Arkansas Supreme Court was correct in citing *Faretta* and in noting Finch could validly waive his right to counsel and invoke his right to self-representation. The appellate court stated that a defendant may do so provided that: (1) his request to waive the right to counsel was unequivocal and timely; (2) his waiver of the right to counsel was knowing and intelligent; and (3) he had not engaged in conduct preventing the fair and orderly exposition of the issues. *Assuming the factual underpinnings were reasonably determined in light of the evidence presented at trial*, we find the Arkansas Supreme Court's decision was not contrary to, or an unreasonable application of, *Faretta*.

C.        *Analysis of Arkansas Supreme Court's Decision Under 28 U.S.C. § 2254(d)(2).*

Even if the Arkansas Supreme Court correctly applied the clearly established federal law, habeas corpus relief remains available if the state appellate court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court. The

Arkansas Supreme Court supported its decision with the following three factual findings.[7]  The Court finds that the second and third factual findings listed below were based on an unreasonable determination of the facts in light of the evidence presented to the trial court.

**Factual Finding #1: The trial court's questions to Finch were irrelevant.**

The Arkansas Supreme Court found the trial court inquiries to Finch included "irrelevant concerns."  This finding is supported the Arkansas Supreme Court's legal conclusion that the trial court's basis for denying Finch's request to represent himself was "invalid."  *Finch v. State*, 2018 Ark. 111, 6.  This factual finding is reasonable based upon the evidence presented in the trial court.

**Factual Finding #2: Finch's requests to represent himself were equivocal.**

The Arkansas Supreme Court concluded "on this record we must conclude that appellant's request was not unequivocal."  *Finch v. State*, 2018 Ark. 111, 6.  The basis of this finding appears to be that Finch had indicated dissatisfaction with his attorney on multiple occasions, and had previously requested substitute counsel.  In discussing the nature of Finch's requests, the appellate court noted he alleged he made two unequivocal requests[8] to represent himself.

Did Finch unequivocally request to represent himself?  The Arkansas Supreme Court's finding that his requests were not unequivocal is, by statute, presumed correct, and Finch can overcome this presumption only by offering clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).  The trial record, outlined below, provides clear and convincing evidence that

---

[7]Finch contends the Supreme Court of Arkansas impermissibly made findings of fact in this case, exceeding its jurisdiction as an appellate court and violating the Arkansas Constitution, Amendment 80, section 2(D)(1); *Hanlin v. State*, 356 Ark. 516, 529 (2004) (appellate court should not affirm on an alternative basis which was not developed at trial, as this denies the defendant the opportunity to address the issue).  The Court need not rule on this argument.  Assuming the Supreme Court of Arkansas permissibly could make factual findings, the findings in this case were unreasonable in light of the evidence presented in state court, and relief is proper on that basis.

[8]In sections I.B & I.C above, Finch states his desire to represent himself on no fewer than six occasions.

Finch unequivocally requested to represent himself.

* 10-7-13    Simpson is appointed to represent Finch.  D.E. 7-2, page 33.

* 11-6-14    Finch files a motion to relieve or substitute counsel.  D.E. 7-2, pages 56-58.

* 11-17-14    Finch files another motion to relieve or substitute counsel.  D.E. 7-2, pages 61-63.

* 9-22-15    At an omnibus hearing, Finch moves for the appointment of a new attorney.  The request is denied.  D.E. 7-2, pages 327-328.

* 10-19-15    At an omnibus hearing, Finch no longer requests a new or substitute attorney.  Instead, he makes four requests to represent himself.  These requests are denied.  D.E. 7-3, pages 10-15.

* 2-25-16    Finch files a motion to waive counsel and proceed *pro se*, citing *Faretta* and requesting a hearing on his motion.  D.E. 7-2, pages 136-138.

* 3-10-16    At a hearing to review the results of Finch's Act 3 mental evaluation, Simpson informs the trial judge of Finch's pending request to waive counsel and proceed *pro se*.  Finch initially states "new counsel," and a lengthy conversation ensues.  D.E. 7-3, page 40.  Throughout this conversation, Finch, the trial judge, and Simpson address only the issue of self-representation.   Finch informs the judge, "I just wish to waive counsel.  That's all I'm asking the Court to do."  The request is denied.  D.E. 7-3, Page 44.  Finch  asks the trial judge, "Also, Your Honor, if the Court would, I would like stand-by counsel though, just stand-by." The request for stand-by counsel is denied.  D.E. 7-3, page 50.

* 10-11-16    The trial court enters an Order denying Finch's 2-25-16 motion to waive counsel and proceed *pro se*, finding "a defendant is not entitled to accept

24

or retain counsel to represent him and also proceed *pro se*." D.E. 7-2, page 186.

\*        11-29-16    The jury trial occurs.

For more than one year before his trial, Finch invariably requested to represent himself, both in writing and orally at two hearings. After September of 2015, Finch's only possible departure from his multiple requests for self-representation was his utterance of "new counsel" at the March 10, 2016, hearing. The balance of the March 10, 2016, hearing reflects an understanding of the parties that the request was clearly for self-representation, including the trial judge asking Finch, "And you want to represent yourself why?" D.E. 7-3, page 41. These requests meet the definition of unequivocal. Cases where a defendant was deemed to make an equivocal request contrast sharply with Finch's case. For example, in *Bilauski v. Steele*, 754 F.3d 519, 522-523 (8th Cir. 2014), the defendant moved once to represent himself, but preceded this request with a motion for new counsel, and followed the motion for self-representation with two additional motions for new counsel. The subsequent motions for new counsel were a repudiation of the earlier request to proceed *pro se*. Similarly, a defendant who requests to represent himself, receives no ruling on the request and then moves to serve as co-counsel was deemed to equivocate in his request to represent himself. *Raulerson v. Wainwright,* 732 F.2d 803, 808–09 (11th Cir.1984). One consideration is whether a defendant is simply dissatisfied with appointed counsel, rather than wanting to forego counsel altogether. *United States v. Barnes*, 693 F.3d 261, 272 (2nd Cir. 2012). Another example of equivocation occurs when a defendant asks counsel to continue representation after a hearing on the motion to represent himself. *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982). *See also Brown v. State*, 2012 Ark.App. 314, 3 (defendant who declined public defender and stated he preferred to "go *pro se*" but wrote to several attorneys and spoke to some but was not "satisfied with my conversations" did not unequivocally request self-representation); *Pierce v. State*, 32 Ark. 491, 504 (2005) (defendant who invoked his waiver of counsel on the day of trial by twice stating he wished to proceed without a lawyer satisfied the *Faretta* requirement of a timely, unequivocal request).

Finch did not vacillate after September 2015, emphatically and repeatedly asking to represent himself.  He did not abandon his requests to represent himself.  The requests were more than simple statements of dissatisfaction with his current counsel, and the Court finds no authority for the notion that a request for stand-by counsel constitutes an equivocal request to proceed *pro se*. *Cf. Jarrett v. State*, 371 Ark. 100, 102 (2007) (request to act *pro se* "with another counsel" was not an unequivocal request to proceed *pro se). See also Jones v. Norman*, 633 F.3d 661, 669 (8th Cir. 2011) (trial court encouraged to appoint stand-by counsel to assist the defendant "without compromising his ability to perform the essential functions of conducting his own defense.")  The opinion of the Arkansas Supreme Court cites only two requests for self-representation made by Finch, at the hearings on October 19, 2015, and March 10, 2016.  The transcript, however, reflects more than two requests were made at these hearings.[9]  The requests were unequivocal, and the trial court treated them as such.  In addition to these requests, the Supreme Court of Arkansas makes no mention of Finch's February 26, 2016, written motion.  This motion, denied in summary fashion in October 2016, with its citation of *Faretta*, is the most unequivocal request for self-representation made by Finch.  By clear and convincing evidence, Finch demonstrates that his requests to waive counsel and proceed *pro se* were unequivocal.

**Factual Finding #3: Finch was disruptive, preventing a fair and orderly exposition of the issues.**

The Arkansas Supreme Court found "that the trial court could have concluded that appellant had 'engaged in conduct that would prevent the fair and orderly exposition of the issues.'"

---

[9]At the October 19, 2015 hearing, Finch made the following statements:  "I want to represent myself then", "I want to represent myself", "I want to represent myself, Your Honor.  And that's all I'm telling you", and  "I don't want no attorney",  D.E. 7-3, pages 10-12.  At the March 10, 2016 hearing, the trial judge is informed that Finch filed a motion to proceed *pro se.*  In the lengthy discussion that follows Finch reiterates, "I just wish to waive counsel.  That's all I'm asking the Court to do."  D.E. 7-3, page 44.

*Finch v. State*, 2018 Ark. 111, 6.[10]  In support of this factual finding, the Arkansas Supreme Court cites an October 19, 2015 hearing where Finch "interspersed his complaints about his attorney with the statement that he wanted to represent himself, [and] he also showed himself to be unwilling or unable to stop talking over other people, including the judge." *Finch v. State*, 2018 Ark. 111, 4.  The Arkansas Supreme Court also concluded that Finch "again showed himself to be disruptive" at a March 2016 hearing.  *Id.* at 5.  Further, the Arkansas appellate court mentions Finch's refusal to cooperate with the portion of the mental evaluations regarding his mental state at the time of the alleged offenses.  It is undisputed that Finch cooperated with the first portion of the mental evaluations, and that both evaluations concluded he could understand the proceedings and assist in his defense.

As previously noted, the trial court did not find that Finch engaged in conduct preventing the fair and orderly exposition of the issues.  As a result, the Arkansas Supreme Court's factual finding in this regard, and its rationale, is not an affirmance of a lower court's decision.  Even so, as a state court factual finding it is entitled to the same presumption of correctness afforded other state court factual findings, and Finch may overcome this presumption only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Perry v. Kemna*, 356 F.3d 880, 884 (8th Cir. 2004).

A careful review of the trial record and the appellate ruling provides clear and convincing evidence that overcomes the presumption that Finch engaged in conduct preventing the fair and

---

[10]The Arkansas Supreme Court did not explicitly find Finch to be disruptive, only "that *the trial court could have concluded* that appellant had 'engaged in conduct that would prevent the fair and orderly exposition of the issues.'" *Finch v. State*, 2018 Ark. 111, 6. (Emphasis added.) This amounts to an implicit factual finding that Finch was disruptive, and this finding is presumptively correct and to be analyzed in the context of 28 U.S.C. § 2254(e)(1).  *See Crespo v. Armontrout*, 818 F.2d 684, 686 (8th Cir. 1987) (federal habeas court deferring to the implicit finding of the Missouri Court of Appeals that "*the trial court could have found* that appellant never asserted his right to counsel before signing the waiver form.") (Emphasis added.)

orderly exposition of the issues.[11]  Since Finch's request to proceed *pro se* was denied, he was represented by counsel at trial, and there is no suggestion that he was disruptive during the trial.  The Court looks, as did the Supreme Court of Arkansas, at his conduct at the hearings preceding the trial.

      *       10-7-13    A hearing occurred, without disruption.  D.E. 7-2, pages 313-317.

      *       4-14-14    A hearing occurred, without disruption.  D.E. 7-2, pages 318-322.

      *       9-22-15    A hearing occurred, where the following exchange occurred:

Finch: Can I speak, Your Honor?

Judge: Mr. Finch.

Simpson: Are you going to sign your notice?

Finch: I don't want you on the case.

Simpson: All right. I 'll put refused, Judge.

Judge: All right. We'll show the record refused then. Mr. Finch refuses to

sign?

Simpson: Your Honor, he has asked us to argue speedy trial. We've looked at the law

---

[11]Finch rightly notes that *Faretta* does not require a trial court to find a defendant has not engaged in disruptive conduct.  Instead, *Faretta* demands that a defendant must knowingly, voluntarily, and intelligently waive his right to counsel.  The requirement regarding disruptive conduct derives from an Arkansas case, *Mayo v. State*, 336 Ark. 275 (1999).  The *Mayo* requirement regarding disruptive conduct can be traced to a pre-*Faretta* case from New York – *People v. McIntyre*, 36 N.Y.2d 10, 18 (1974).  *See Barnes v. State*, 258 Ark. 565, 571 (1975) (citing *McIntyre* as "consistent with our own decisions and with *Faretta*").  *McIntyre* envisions an instance where a defendant is granted his right of self-representation and later disruptive behavior results in the forfeiture of the right of self-representation.  The *Faretta* decision also recognized the possibility of a trial judge terminating "self-representation by a defendant who deliberately engages in serious and obstructionist misconduct."  422 U.S. at 834, n. 46.  This is unlike Finch's case, where the Arkansas Supreme Court preemptively ruled Finch's conduct *prior to the trial and prior to granting his request to represent himself* warranted the denial of his right of self-representation.  In any event, this discussion is academic.  Even if the Court assumes a finding concerning a defendant's behavior is a valid requirement, the result in this case is not changed, as the Supreme Court of Arkansas' factual finding on this issue was unreasonable.

in his case. We don't believe there's merit to it, so we're not going to file that motion.
I've explained to him we can't file a motion that we don't believe there's merit to. He's
filed a motion. I guess he can argue it himself on the Omnibus Hearing date.

Judge: Well, if he have an attorney then the Court can doesn't have to accept a pro
se motion, so.

Simpson: Right.

Judge: All right.

Simpson: So that's pending is what I'm saying.

Judge: Okay .

Simpson: Anything else -- now, Mr. Finch, anything else you want to ask the Court?

Finch: Yeah, I -- I want to fire him today because he's not acting in the best of my
interest.

Judge: All right.

Finch: I -- I'd like a new attorney to be appointed towards me.

Judge: All right. That request will be denied. Anything else, Mr. Simpson?

. . .

Finch: What are you going to do?  What you going to do?  Are you going to file
motions?

Simpson: The Judge has left us on the case.

Finch: That's what I'm asking.

Simpson: We are going to file motions.

Finch: What kind of motions you going to file?

Simpson: That there's - -

Finch: You – you not representing me.  I don't want you - - you need to relieve yourself because you're not representing me.

Simpson: I'll put refused, Judge.

Finch: I'm not - -

Judge: Sir?

Finch:  - - being represented.

Simpson: Put refused.

Judge: Okay.  He refused, all right.


D.E 7-2, pages 323-328, and D.E. 7-3, pages 3-4.

*      10-19-15    A hearing occurred.  The relevant exchange between the lawyers, Finch, and the trial judge is quoted above in section I.C, *Relevant Trial Court Hearings Regarding Self-Representation*.  D.E. 7-3, pages 9-15.

*      11-16-15    A hearing[12] occurred, without disruption.  D.E. 7-3, pages 17-27.

*      2-16-16    A hearing occurred, without disruption.  D.E. 7-3, pages 28-32.

*      2-29-16    A hearing occurred, without disruption.  D.E. 7-3, pages 33-36.

*      3-10-16     A hearing occurred.  The relevant exchange between the lawyers, Finch, and the trial judge is quoted above in section I.C, *Relevant Trial Court Hearings Regarding Self-Representation*.  D.E. 7-3, pages 40-

---

[12]A substitute judge presided over this hearing.

51.

*     6-20-16    A hearing occurred, without disruption. D.E. 7-3, pages 54-58.

*     6-29-16    A hearing occurred, without disruption. D.E. 7-3, pages 59-63.

*     11-7-16    A hearing occurred, without disruption. D.E. 7-3, pages 64-69.

*     11-18-16    A hearing occurred, without disruption. At this hearing, the prosecution recited two plea offers conveyed to Finch, and he stated he had rejected these offers. D.E. 7-3, pages 70-75.

*     11-29-18    The jury trial begins. The defense pursued on behalf of Finch is a general denial. After the prosecution rests its case, Finch states on the record that he was informed of his right to testify and opted not to do so. The defense calls no witnesses. D.E. 7-3, pages 291-295.

Was Finch disruptive to the point that he would prevent the fair and orderly exposition of the issues? The trial record establishes, by clear and convincing evidence, that the Arkansas Supreme Court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). Simply, the record does not support the factual finding regarding Finch's conduct.

There were twelve pretrial hearings over the three year period leading up to trial. The vast majority (nine of the twelve) of these hearings proceeded with no disruption. The three occasions[13] which could arguably be cited as examples of disruptive conduct are quoted herein. The level or amount of disruptive behavior in these hearings must be examined. At the 9-22-15, hearing Finch interrupted Simpson. He did not receive any warning from the trial judge, and there was no delay in resolving the issues raised at the hearing. The record shows the trial judge cautioned Finch at the

---

[13]These are the hearings conducted on 9-22-15, 10-19-15, and 3-10-16. The Supreme Court of Arkansas cited only the second and third of the above hearings as examples of disruptive behavior by Finch.

10-19-15 hearing about his behavior.[14]  At the 3-10-16 hearing, Finch interrupted the trial judge on several occasions, without any cautions from the judge and without any delay in resolving the issues raised at the hearing.

Viewing the pretrial hearings as a whole, the record shows that none of the twelve hearings were disrupted such that the purpose of the hearing was frustrated.  Although Finch was cautioned to speak in turn, the trial judge never warned him to stop talking, to take a seat, to lower his voice, etc., or other warnings indicating the hearing could spiral out of control.  Significantly, the trial judge never informed Finch that disruptive behavior could result in the denial or revocation of his right to represent himself.  None of the hearings were stopped due to Finch's conduct.  There was no suggestion that Finch was attempting to manipulate, subvert, or delay the trial process.  *See Whitlow v. State*, 2016 Ark.App. 510, 7-8.  There was no suggestion Finch was playing "cat-and-mouse" with the court.  *See Wilson v. State*, 88 Ark.App. 158, 167 (2004).  There was no outburst by Finch.  *Cf. Talley v. State*, 2017 Ark.App. 550, 15-16 (defendant "exploded into an emotional outburst that runs on for eleven pages of the trial transcript," prompting the trial judge to find the defendant did not "know how to contain himself.") The Eighth Circuit Court of Appeals distinguishes disruptive or defiant behavior from other frivolous behavior to be expected from a defendant representing himself, including nonsensical pleadings or even "occasionally wacky" behavior.  *United States v. Smith*, 830 F.3d 803, 810 (8th Cir. 2016) (quoting *United States v. Johnson*, 610 F.3d 1138, 1147 (9th Cir. 2010).  Some of Finch's conduct, such as the volume of *pro se* motions or his vacillating on whether he would call witnesses at trial, may be aptly viewed as frivolous, and could have properly been addressed by the trial judge via "repeated denials and lesser sanctions if necessary."  *Id.*  Frivolous conduct is not necessarily disruptive of a trial or defiant.  Finally, the trial court did not offer any curative measures available to address disruptive behavior.

---

[14]The trial judge informed Finch that one person could talk at a time, told Finch that he continued to "talk over" the judge, twice told Finch that the judge was trying to talk, and that Finch was not letting the judge finish his question or statement.

For example, the trial court denied Finch's request for a stand-by attorney.  *Faretta* notes that stand-by counsel may be appointed to be available if self-representation must be terminated.  422 U.S. 806, n. 46.   In addition, the trial court could have warned Finch that any disruption of the trial process could result in the revocation of his right to represent himself.  *See Illinois v. Allen*, 397 U.S. 337, 343 (1970).

The Supreme Court of Arkansas' citation of Finch's behavior at the October 19, 2015, and March 10, 2016, hearings as evidence of disruptive behavior, preventing a fair and orderly exposition of the issues, was unreasonable in light of the facts presented in state court.  Instead, clear and convincing evidence leads to the opposite conclusion.  Finch overcomes the presumption of correctness.[15]

### Summary of Finch's First Claim

The Constitution affords Finch the ability to waive his right to counsel and represent himself so long as he unequivocally and timely waives his right to counsel, and the waiver is knowing and intelligent.  The trial court erroneously denied Finch's timely and unequivocal requests to waive counsel and proceed *pro se*, basing its decision on irrelevant inquiries and absent factual findings evidencing a knowing and intelligent waiver.  The Arkansas Supreme Court affirmance of the trial court's decision rested upon two factual findings[16] by the appellate court: (1) Finch was equivocal

---

[15]It is possible that the Arkansas Supreme Court deemed Finch's decision not to cooperate with the second prong of the Act 3 evaluation as behavior which was disruptive.  If that is case, the Court rejects such reasoning.  The "fair and orderly exposition of the issues" is a reference to the court setting, and whether disruptive behavior will hinder a trial.  Finch, already deemed capable of assisting in defense, was not required to participate in the second prong of the Act 3 evaluation and his decision in that regard did not amount to behavior affecting an orderly trial.

[16]Separate from the two factual findings which this Court has addressed, the Arkansas Supreme Court also observed, "This court has held that a trial court cannot determine whether a waiver of counsel is knowingly and intelligently made when an examination of a defendant's competency to stand trial had not yet been made. *Mayo v. State*, 336 Ark. 275, 283, 984 S.W.2d 801, 806 (1999)."  The Court does not consider this to be a factual finding, since it is not portrayed as such, either explicitly or implicitly.  It is properly viewed as *dicta* in this instance, since Finch was found able to understand the proceedings and assist effectively in his own defense in January 2015, and again in March 2016.  D.E. 7-2, page 68, D.E. 7-3, page 39.  Thus,

in his requests to waive counsel; and (2) Finch engaged in conduct preventing the fair and orderly exposition of the issues. Both of these factual findings were unreasonable in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2). Due to the unreasonable determination of the facts by the appellate court, no statutory deference is to be given to the state court decisions. The Court finds that Finch's constitutional right to self-representation was violated. The deprivation of the right of self-representation cannot be harmless as the violation is a structural error that affects the framework within which the trial proceeds.[17] *McKaskle v. Wiggins*, 465 U.S. 168, 177 n. 8 (1984); *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148–49 (2006); *Akins v. State*, 330 Ark. 228, 236 (1977). Accordingly, the Court recommends that habeas corpus relief be granted, and the State be directed to either release Finch or to provide him a new trial within one hundred and twenty (120) days.[18]

IT IS SO ORDERED this 26th day of April, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

---

his competency to stand trial had been ascertained throughout the proceedings, and *Mayo* did not prohibit the trial court from deciding if Finch knowingly and intelligently waived counsel.

[17]Other examples of structural errors which are immune to harmless error analysis include the denial of counsel, see *Gideon v. Wainwright,* 372 U.S. 335 (1963), the denial of the right to public trial, see *Waller v. Georgia,* 467 U.S. 39, 49, n. 9 (1984), and the denial of the right to trial by jury by the giving of a defective reasonable-doubt instruction, see *Sullivan v. Louisiana,* 508 U.S. 275 (1993). *United States v. Gonzalez-Lopez*, 548 U.S. at 148–49 (2006).

[18]The Court finds Finch's second claim for relief, the denial of due process by the trial court's ruling on the motion for mistrial based upon juror misconduct, without merit. Although the trial court should have acted differently, inquiring into the nature of the information introduced by the offending juror, the Arkansas Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law, nor was the state court decision based upon an unreasonable determination of the facts in light of the evidence presented in state court. Specifically, the state appellate court's determination that there "was no reasonable probability of prejudice" to Finch is entitled to deference under 28 U.S.C. § 2254(d)(1)(2). *Finch v. State*, 2018 Ark. 111, 10.